## SALINAS v. PEARSALL.

1.  Where a trustee of J. and her children purchased land with the proceeds, in part at least, of trust property, and took deed to himself as trustee, he holds the land so purchased under the terms and limitations of the original trust deed.

2.  And this trustee having sold a part of this land to the defendant, and taken in part payment a bond and mortgage payable to himself as trustee for J., he could not assign these papers to secure advances to be made to J. and her husband.

3.  Power to the trustee to sell for the purpose of reinvestment, when requested by J., did not authorize such assignment at J.'s request; for, while ordinarily a purchaser is not required to see to the application of the purchase money, he is not protected where he knows of the breach of trust, or the improper application is for his own benefit.

4.  In action of foreclosure instituted by the assignee, the mortgagor may defeat the action by showing that there has not been a legal assignment.

5.  Complaint dismissed without prejudice to any proper claim in equity against the income of the trust property.

Before KERSHAW, J., Darlington, March, 1885.

This was an action by Caroline B. Salinas, as executrix, and Richard M. Butler, as executor, of A. J. Salinas, deceased, against J. H. Pearsall, for the foreclosure of a mortgage given by defen-

dant to Edward F. Bryan, as trustee, and assigned by said trustee to A. J. Salinas. The action was commenced February 2, 1884. The defendant denied the validity of the assignment.

In 1870 one Charles E. Jarrott conveyed a tract of land in Marion County, called the "Cooper tract," and some personal property to Edwin F. Bryan, of Savannah, Ga., in trust to stand seized and possessed of this property "to the sole and separate use and behoof of my said wife, Emma E. Jarrott, for and during the term of her natural life, and to pay over to her on her separate receipts in writing all the incomes, rents, profits, and accretions of the said property, real and personal, and the interests on choses in action which he may receive, or be possessed of, and from and after the death of my said wife, then to the use of such of the children of our marriage, if more than one, share and share alike, the child or children of any who may then be dead to be entitled to the share or shares thereof to which the parent, or parents, would have been entitled if living; the said estate to be absolute to the said children or their representatives; and also to have and to hold the said property and estate heretofore described, for the uses and purposes above set forth, and for the following uses and trusts, to wit: That upon the written request of my said wife, Emma E. Jarrott, he, the said Bryan, may sell and convey any portion of the said estate and property described above, and to reinvest the proceeds of said sale in such property as he may deem advisable, with the like written consent of my said wife, the said reinvestments or proceeds of sales of any of said property and estate to be subject to the same trusts, limitations, and uses as are herein declared and provided in respect to the property and estate hereinabove conveyed, described, and set forth."

In February, 1873, Edwin F. Bryan purchased at a judicial sale a tract of land in Darlington County, part of the Cusack tract, containing 420 acres, and took deed in the name of "E. F. Bryan, trustee," without further indication of the trust. In June, 1873, he conveyed 57 acres of this land to the defendant, and the defendant executed his bond and mortgage to secure a balance of the purchase money. The bond was payable to "Edwin F. Bryan, of Savannah, Ga., trustee for his sister, Mrs. Emma E. Jarrott"; and the mortgage recited the bond to "Edwin F. Bryan,

of Savannah, Ga., trustee for Mrs. Emma E. Jarrott," and conveyed the property to "Edwin F. Bryan, trustee."

· In March, 1874, at the written request of Mrs. Jarrott, in a letter to Bryan, "as trustee," he assigned this bond and mortgage to A. J. Salinas, to the amount of $700, to secure "advances to be made by A. J. Salinas, cotton factor of Charleston, S. C., to C. E. Jarrott and Emma E. Jarrott"; and in March, 1875, upon the request by letter of Charles E. Jarrott, "Edwin F. Bryan, trustee," assigned this bond to said Salinas. These advances, Bryan testified, were for the purpose of enabling said Jarrotts to pursue jointly their planting interests.

On August 10, 1883, Edwin F. Bryan executed a declaration of trust, in which, after reciting his purchase of the 420 acres known as part of the Cusack tract, and his payment therefor "out of trust funds derived from a portion of the proceeds of the sale of the Cooper tract in Marion County," and the rents and profits of the said land, and money received from the insurance company for houses destroyed on the said Cusack place, and a sale of a portion of the said Cusack place, he declared that he held the land so purchased at the judicial sale for "following uses and trusts"—stating the same in the same words as are found above in the extract from the original trust deed.

Salinas having died, his executors instituted this action to foreclose the Pearsall mortgage. It was admitted that children of Chas. E. and Emma J. Jarrott were living. After stating the facts, the Circuit decree proceeded as follows:

Under these circumstances, I am forced to the conclusion that the plaintiffs cannot recover in this action. The bond and mortgage were unquestionably subject to the same trusts as the property originally conveyed, and the assignee, if he had notice of the trusts, or of facts sufficient to put him on the inquiry, could take no beneficial interest by the assignment. The legal interest in the bond and mortgage, no doubt, would pass, but it remained subject to the trusts. The *cestui que trust* is not before the court, and the trustee and the remaindermen, if there be any, are not represented or made parties. The object of this action is to alienate and dispose of a portion of the trust property.

It appears to me that a bare statement of these facts will be

sufficient to dispose of the case if the plaintiff's testator had notice of the trust. Of that there can be no doubt. The bond shows on its face that it was given to Edwin F. Bryan, "trustee, for his sister, Mrs. Emma E. Jarrott." The purchaser of such a bond was bound to inquire into the terms of the trust, and if he did not, the trust remains, and he must take subject to its terms, be they what they may. *Simons* v. *Bank*, 5 *Rich. Eq.*, 272; *Webb* v. *Graniteville Man. Co.*, 11 *S. C.*, 407; *Magwood* v. *Bank*, 5 *S. C.*, 390. The assignment was a breach of trust, known to Salinas, and, therefore, he cannot profit by it. If he acquired the legal title, it was by a wrong, which, though participated in by the *cestui que trust*, will not be sanctioned or assisted by this court.

It is not improbable that the plaintiffs have an equitable demand against the Jarrotts arising out of this transaction which might be enforced against the income of the trust property, upon proper proceedings, with all the proper parties before the court, but they cannot have the relief here demanded.

It is ordered and adjudged, that the complaint herein be dismissed, and that the plaintiffs pay the costs of this action, to be adjusted by the clerk.

From this decree the plaintiffs appealed.

*Mr. Geo. W. Dargan*, for appellants, contended that until the declaration of trust in 1883, there was no written statement of the source whence Bryan derived the money to pay for the Cusack place; that the rents and profits then declared to have been a part of the purchase money, were Mrs. Jarrott's own, under the terms of the original trust deed, and as there is nothing to show that the Cusack place was any part of the trust property, a sale of a portion thereof, and the insurance money, were not subject to the trust. The reinvestment of the proceeds of sale of the Cooper tract would not subject the purchase to the trust, unless the reinvestment was made upon the written request of Mrs. Jarrott—of which there is no evidence. Salinas had no notice, and could have acquired none, that the tract in Darlington was subject to the same trusts that had been impressed upon the land in Marion. On the contrary, the deed to Bryan for the Cusack

tract, and the bond and mortgage only disclosed a trustee and one adult *cestui que trust*, and the assignment was by one for the use and with the consent of the other. *Barrett* v. *Cochran*, 11 *S. C.*, 35. But if trust property, the defendant cannot defeat this action. *Mayer* v. *Mordecai*, 1 *S. C.*, 398. Mrs. Jarrott cannot complain; she is entitled to the interest, and for that, at least, foreclosure should be decreed. *Matthews* v. *Heyward*, 2 *S. C.*, 239. The declaration of trust was executed after the assignments. *Haynsworth* v. *Bischoff*, 6 *S. C.*, 166.

*Messrs. Boyd, Nettles & Brunson*, contra.

February 16, 1886. The opinion of the court was delivered by

MR. CHIEF JUSTICE SIMPSON. [Omitting the statement of facts.] The plaintiffs have appealed upon several exceptions. These exceptions, however, raise but three questions. 1st. That his honor erred in holding the bond and mortgage to be trust property. 2d. In holding that the plaintiffs' testator became assignee with knowledge of the trust, or at least of facts sufficient to put him upon inquiry, which, if properly conducted, would have resulted in the discovery of the trust. 3d. That he erred in holding that the defendant could defeat the action on these grounds.

I. Did Bryan hold these papers as trustee of Mrs. Jarrott, and under the limitations of the original trust deed? There can be no doubt that, as between himself and the *cestui que trusts*, he did so hold them. They were the result of a sale of a tract of land which he had purchased as the trustee of these parties, and paid for in part, at least, by the proceeds of the sale of a portion of the original trust property. This land was conveyed to him as trustee. True, it is not stated in the deed who were the *cestui que trusts*, but there can be no doubt on this subject. If the contest here was between him and the *cestui que trusts*, could any court hesitate to enforce the trust under the facts as stated? Besides this, upon the face both of the bond and mortgage it appears that they were each executed to him as trustee of Mrs. Jarrott.

II. Now, the important question arises, Did Salinas have knowledge of this fact, or knowledge of facts sufficient to put him upon such inquiry as would have led to a discovery of the trust

impressed upon these papers? If so, he could not hold them discharged of the trust, unless they were properly assigned under the power of the original deed—of which hereafter. His honor, the Circuit Judge, found as matter of fact, that Salinas did have the knowledge above. Is that finding contrary to the manifest weight of the testimony? If not, this court, under the authority of many decisions, must let it stand. We do not see such manifest weight of testimony against this finding of the Circuit Judge as would warrant us in overruling it. On the contrary, there is evidence to support it. The very papers assigned to him advertised him of the fact on their face, that they were connected with a trust, and that Bryan held them, not as his own property, but as a trustee for Mrs. Jarrott. This, it seems to us, was enough in itself to make him hesitate, at least to make him inquire into the nature and character of this trust. It does not appear that he had done this, nor that had he looked into the records he would have failed to ascertain the facts in reference thereto. We think that Mr. Salinas must have known that he was dealing with a trustee, and with reference to trust property.

It may be urged, however, that he thought this trustee had the right to sell and assign, when done with the consent of the *cestui que trust*, and he knew this consent had been given. True, the trustee had power to sell the trust estate or any portion thereof, with the written consent of Mrs. Jarrott, for reinvestment. Was the assignment here for reinvestment? Certainly not. It was to pay a debt contracted by Mrs. Jarrott and her husband for supplies, and its effect was not to keep the trust estate alive, but to destroy it, and this must have been apparent to Salinas. A purchaser is not ordinarily required to see to the application of the purchase money where the vendor has power to sell, but where he knows, or ought to know, that a breach of trust is being committed, he cannot shield himself. *Simons* v. *Bank*, 5 *Rich. Eq.*, 272; *Webb* v. *Graniteville Manf. Co.*, 11 *S. C.*, 407; *Mayer* v. *Mordecai*, 1 *S. C.*, 398. Especially where the breach of trust and the improper application of the funds is for his benefit.

III. Lastly, can the defendant interpose the objections above, and thereby defeat the action? Has there been a legal assignment? If not, the plaintiffs must fail to recover. That there has

not, is the defence, and we think the defence has been sustained. We say this, however, without prejudice to any equitable claim which the plaintiffs may have, arising out of the transaction, against the income of the trust property, upon proper proceedings, with all parties before the court, as suggested by the Circuit Judge.

It is the judgment of this court, that the judgment of the Circuit Court be affirmed.